Filed 8/2/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062401 |
| v. | (Super.Ct.No. RIF1204202) |
| KRISTIE MARIE HAMERNIK, | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendant and Appellant. | |
| | [NO CHANGE IN JUDGMENT] |

The petition for rehearing is denied. The opinion filed in this matter on July 11, 2016, is modified as follows:

1. On page 3, the first sentence under section A, Procedural History, "The information filed against defendant by the Riverside County District Attorney's office . . ." is modified to read as follows:

"The information filed against defendant by the California Attorney General's office . . . ."

1

Except for this modification, the opinion remains unchanged.  The modification does not affect a change in the judgment.

CERTIFIED FOR PUBLICATION


MILLER_____
                                                                                              J.


We concur:


HOLLENHORST_____
                              Acting P. J.


McKINSTER_____
                              J.

Filed 7/11/16 (unmodified version)

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E062401 |
| v. | (Super.Ct.No. RIF1204202) |
| KRISTIE MARIE HAMERNIK, | OPINION |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Irma Poole Asberry, Judge. Reversed.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.


1

Defendant and appellant Kristie Marie Hamernik was a licensed vocational nurse employed at the Vista Cove Care Center in Corona. Defendant was suspended from work but returned to the facility purportedly to retrieve personal items. While at the facility, she entered the room of one of her former patients, Eiko Dorsch. Eiko[1] used a mechanism called a CADD pain pump, which delivered pain medication to her intravenously. After defendant visited Eiko, the medication in the pain pump was empty. Defendant was found guilty of attempted possession of a controlled substance.

Defendant makes two claims on appeal as follows: (1) the trial court erred by finding that attempted possession of a controlled substance was a lesser included offense of possession of a controlled substance; thereby substituting the attempted possession of a controlled substance for the drug possession charge after granting defendant's motion to dismiss the greater charge at the end of the People's case-in-chief; and (2) the trial court erred by admitting prior acts evidence pursuant to Evidence Code section 1101, subdivision (b).

We agree with defendant that the trial court erred by substituting attempted possession of a controlled substance for the possession of a controlled substance. Moreover, we reject that we can correct the error by ordering the trial court to amend the information or that such error was harmless. We reverse defendant's conviction.

---

[1] We use first names for the sake of clarity; no disrespect is intended.

# FACTUAL AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

The information filed against defendant by the Riverside County District Attorney's office charged her with unlawful possession of a controlled substance, Dilaudid, in violation of Health and Safety Code section 11350, subdivision (a) (count 1). She was also charged with misdemeanor theft from an elder of property not exceeding $950 within the meaning of Penal Code section 368, subdivision (d)(2) (count 2). After the presentation of evidence, the trial court dismissed the possession of a controlled substance charge, and substituted attempted possession of a controlled substance for the charge in count 1, a lesser related offense. The jury found defendant guilty of attempted possession of a controlled substance within the meaning of Penal Code section 664 and Health and Safety Code section 11350, subdivision (a). Defendant was found not guilty of theft from an elder.

After she was convicted, defendant filed a motion to have her conviction of attempted possession of a controlled substance reduced to a misdemeanor pursuant to Penal Code section 1170.18, e.g. Proposition 47. The motion was granted. On November 14, 2014, defendant was granted summary probation for a period not to exceed 36 months. Defendant filed a notice of appeal on November 21, 2014.

### B. FACTUAL HISTORY

#### 1. *PEOPLE'S CASE-IN-CHIEF*

Debbie Dorsch was Eiko's daughter. In June 2012, Eiko was a resident at Vista Cove Care Center in Corona (Vista Cove). Eiko was 79 years old at the time; she was at

3

Vista Cove because she had terminal cancer. Defendant was a licensed vocational nurse (LVN) and one of Eiko's nurses at Vista Cove. The decision was made that Eiko not be treated with chemotherapy drugs or radiation; she was treated with "comfort measures," i.e., pain medication. The pain medication was dispensed through a CADD pump.[2]

On June 28, 2012, at around 9:00 p.m., Debbie was visiting Eiko at Vista Cove. At around that time, defendant came to Eiko's room. Defendant was not wearing a uniform. Defendant sat on the other bed in the room, which was empty. Debbie asked her what she was doing. Defendant told her that she was hiding from the other patients. Defendant did not otherwise talk to Debbie and Eiko. Defendant was still in the room when Debbie left to go home. Defendant was the only one in the room.

Prior to that night, Debbie had seen defendant handling the CADD pump belonging to Eiko. Debbie had seen her use a key to open up the CADD pump; she had seen defendant touch buttons, and had seen her handle the cassette that contained the pain medication, which was placed in the CADD pump. Defendant had touched the pump at least six times.

Debra Miller had worked at Vista Cove as a certified nursing aide. Miller had cared for Eiko. The only authority Miller had to touch the CADD pump was to reposition it when she would move Eiko in the bed. On June 28, Miller was in Eiko's

---

**2** A pharmacist testified that a CADD pump consisted of a cassette filled with medication prescribed by a physician. The cassette was put in the pump, which continuously dispensed medication through a tubing connected to an intravenous line in the patient. The pump could be tampered with by breaking the seal on the tubing and pulling out the drug with a syringe. The cassette could only be removed by using a key.

4

room around 9:00 p.m. She saw defendant sitting on the other bed in the room playing on her cell phone. She was in regular clothes.

Miller turned her back to defendant to write on a white board that was in the room. She asked defendant if she would want to go outside and have a cigarette during her break but defendant told her she had quit smoking. When Miller turned back around, defendant was standing over Eiko. She had the pain pump in her hand. She told Miller that the medication was almost gone. Defendant left the room. Miller went to her supervisor because she thought it was strange defendant was holding the pain pump.

Esperanza Ladia was a registered nurse. In 2012, she was the shift supervisor from 3:00 p.m. to 11:00 p.m. at Vista Cove. Ladia supervised the giving of intravenous drugs including through the CADD pump. As a registered nurse, she was qualified to change the pain medication in the pumps. Defendant, as an LVN, would not be allowed to remove an empty pain cassette for a patient or change the dosage.

Ladia cared for Eiko. Ladia could not recall without the records what kind of medication Eiko had in the CADD pump. Ladia checked Eiko's pump at 3:30 p.m. on June 28; it was working. There were 32 milliliters of pain medication remaining in the pump. Ladia went to Eiko's room around 9:00 p.m. The bag on the pump was empty but no alarm had sounded. An alarm usually sounded when the medication was low or gone. The monitor showed 25 milliliters but the bag was empty. Further, a seal on the CADD pump was broken.

Coszette Cobb, a registered nurse, was the director of nurses at Vista Cove. Cobb had training in using CADD pain pumps. Only registered nurses were permitted to work

with the pain pumps; defendant was not permitted to work with the CADD pump. Cobb observed Eiko's CADD pump on June 28. The display stated it had 25 milliliters of medication. However, the cassette appeared empty although it was still locked in place. The seal on the pump was broken. In her experience, she had never seen a tamper seal break on a pump. Cobb tested the pain pump and there was no medication left. On the night of June 28, defendant had been suspended and was not permitted to be in the facility.

Cobb explained that at Vista Cove only pharmacists programmed the amount of pain medication dispensed to the patients. They were the only ones with access to the code for the pumps.

Judy Dacayo was a registered nurse and worked at Vista Cove in 2012. Dacayo checked Eiko's CADD pump on June 28 at 7:30 p.m. It had 28 milliliters of medication remaining. The blue tamper seal was intact. Dacayo saw defendant at Vista Cove around 9:00 p.m. Defendant came to the nurse's station. Defendant told Dacayo that she was at the facility to pick up her blood pressure cuff. Defendant told Dacayo that Eiko's pump was empty. Dacayo did not hear the pump beeping, which it should have done if it was empty. Defendant did not have anything in her hands.

Dacayo spoke with Dennis Santos, who was the LVN on duty passing out medication. Ladia, Dacayo and Santos all went to Eiko's room. They all noticed that the blue seal on the tubing was broken and the cassette was empty. There was no medication in the bag. Dacayo did not see defendant after she left the nurses' station. Eiko received 4 milliliters of pain medication each hour.

6

Santos was making rounds giving out medication around 9:00 p.m. He observed defendant in Eiko's room. Debbie was also in the room. Santos asked defendant what she was doing and she told him that she was visiting the family. He assumed that she was friends with Eiko and Debbie. Santos left the room. Sometime later he was informed that Eiko's pain pump was empty. Santos observed defendant go into the restroom. He then saw her leave the restroom and walk out of Vista Cove.

Sue Selfridge was another one of Eiko's daughter. Defendant did not have a close relationship with their family. In June 2012, Eiko had to be hospitalized at the Corona Regional Medical Center. Selfridge did not advise defendant that Eiko was at the facility. However, defendant appeared in Eiko's room. Defendant told Selfridge that she had been advised by staff at Vista Cove that Eiko had been taken to the medical center. Defendant sat next to Eiko. Selfridge left the room for about five minutes. When Selfridge returned, the curtains were drawn around Eiko's bed; they were not like that when she left the room. When Selfridge pulled back the curtain, defendant was holding Eiko's CADD pain pump in her hand. When Selfridge made eye contact with defendant, defendant pushed the pain pump back toward Eiko. While Selfridge was visiting Vista Cove, each time that she saw defendant in Eiko's room, defendant would touch the CADD pump.

Steve Perez was a special agent employed by the Department of Justice. He was assigned to the elder abuse department. Perez investigated Eiko's empty CADD pump. Perez discovered defendant had been suspended by Vista Cove. Perez spoke with defendant in September 2012 at her home. Defendant told Perez she had gone to visit

7

Eiko. Eiko told her the CADD pump was not working and to tell someone. Defendant checked the bag and noticed it was empty. She went and told the nurse. Defendant told Perez that Eiko's pain pump contained Dilaudid. Defendant denied she had taken the Dilaudid. Defendant claimed she was close with Eiko and the family.

Defendant claimed the family called her to tell her that Eiko had been moved to the Corona Regional Medical Center. She went to the hospital as suggested by the family to check on her. Defendant then changed her story that she tried to call the daughter and got no answer. Defendant denied holding the pain pump while she was at the hospital. She claimed if anyone said that she had been holding the pain pump, they would be lying. Defendant told Perez she had been prescribed Dilaudid 15 times for medical conditions including kidney stones.

### 2. *DEFENSE*

Defendant testified on her own behalf. Defendant went to Vista Cove on June 28 to get her blood pressure cuff and stethoscope. She left her belongings in her car. Defendant found Santos in Eiko's room; she asked him about her medical equipment. Defendant sat on the empty bed in the room while Santos finished treating Eiko. Everyone left the room and she stayed to tell Eiko she hoped she got better. Eiko motioned for her to check the pain pump. Defendant picked it up and determined it was low. Defendant went to the nurse's station to make sure that the CADD pump was checked.

Defendant visited Eiko at the Corona Regional Medical Center because she was told by other staff members Eiko had been admitted. Defendant had a relationship with

8

the family and wanted to make sure Eiko was okay. Defendant had assisted Eiko to reposition herself because Eiko was uncomfortable. As defendant was repositioning Eiko, defendant touched the CADD pain pump to move it out of the way. Defendant denied she ever took Dilaudid from Eiko. Defendant was terminated due to the June 28 visit.

## DISCUSSION

Defendant contends the trial court erred by substituting the charge of attempted possession of a controlled substance for possession of a controlled substance, specifically Dilaudid, charged in count 1. Defendant claims attempted possession of a controlled substance is not a lesser included offense of possession of a controlled substance because the latter requires only general intent, and the former requires specific intent. This last minute change violated her Sixth Amendment right to be advised of the charge against her. The People concede that attempted possession of a controlled substance is not a lesser included offense of possession of a controlled substance. However, the People contend the trial court should have granted the prosecution's motion to amend the information to add the charge. The People insist remand or reversal is not required and that this court can order the trial court to amend the information. Further, the People contend that such error was harmless because substantial evidence supported that defendant committed attempted possession of a controlled substance.

A.     <u>ADDITIONAL FACTUAL BACKGROUND</u>

Throughout the prosecution's case-in-chief, defendant's counsel objected to any witness who attempted to identify the medication in Eiko's CADD pump as Dilaudid.

9

For example, during the examination of Debbie, the trial court sustained the objection by defendant's counsel that Debbie had knowledge the pain medication in Eiko's CADD pump was Dilaudid. The pharmacist, who was called to explain how CADD pumps operate, was not able to testify that Eiko was receiving Dilaudid.

When Dacayo testified, the prosecutor argued Dacayo could state what was in the cassette for Eiko because Decayo signed for it and she was a registered nurse. Defendant's counsel argued Dacayo had not tested or placed the medication in the bag. There was no foundation for her knowledge of the substance and there was a chain of custody problem. The prosecutor explained, "Your Honor, we have charged [defendant] with theft from an elder and possession of Dilaudid. The theft was the Dilaudid. We have put on, I think, six professionals and a family member that have all attempted to explain that Dilaudid was in the pain pump. Foundation has been—objections have been sustained to every single one of them." The trial court sustained the objection to Dacayo's testimony on hearsay grounds. The prosecutor stated she would need a continuance in order to present the testimony of the pharmacist who filled the cassettes placed in Eiko's pump. Defendant's counsel objected to a continuance. He also objected to what he considered late discovery.

At the next hearing, the prosecutor reported she had been in contact with the pharmacy that dispensed the Dilaudid, and was waiting to hear from the pharmacist. Defendant was not willing to stipulate that the substance was Dilaudid and objected to a continuance. The trial court stated, after an in-chamber conference, that the prosecutor sought to have the information amended to change the charge in count 1 to attempted

10

possession of a controlled substance. Defendant's counsel objected on the grounds of due process and defendant's right to a fair trial and to effective assistance of counsel. Defendant's counsel argued there was no notice prior to the trial that there would be a problem of proof. There was no notice during the preliminary hearing. Defendant's counsel also noted that the general intent crime of possession was now a specific intent attempt crime. It "drastically" changed the trial strategy. All of the witnesses had already testified.

The trial court noted, "[A]ttempt is a lesser included offense with regard to Count 1. It's very clear to that. This isn't a secret to the defense in this matter that it's a lesser included offense." There was no problem with notice. Further, the trial court had the obligation to instruct the jury on lesser included offenses. The trial court did not believe a continuance was appropriate.

Defendant then brought a Penal Code section 1118.1 motion to dismiss both counts. Defendant argued that there was no evidence the substance in Eiko's pump was Dilaudid. Further, there was no showing of a useable amount. The trial court found there was insufficient evidence to support the greater offense of possession. The trial court stated it had discretion, however, to have the jury consider the necessarily lesser included offense of attempted possession. Defendant had notice of the lesser included offense of attempted possession. The trial court stated, "I also want to note that the fact that the drug in question has not been proven to be Dilaudid is not fatal to a lesser included offense being submitted to the jury. Obviously, the attempt would mean it's specific intent. And the case law does support where there is testimony and evidence that the

11

intent of the defendant in acting was that their understanding that the item being taken was a drug, that that is sufficient evidence that would allow it to go to the trier of fact." The trial court dismissed the greater offense. The trial court found the motion to amend the information was moot.

On October 20, 2014, defendant filed a motion to reconsider the trial court's determination that the People could proceed as an attempted possession case, because there had been a failure in the People's case-in-chief to prove the substance was in fact a controlled substance, specifically Dilaudid. Defendant's counsel argued that attempted possession was not a lesser included offense of simple possession. There was no notice that this was an attempted possession case. Defendant relied on the case of *People v. Bailey* (2012) 54 Cal.4th 740, in arguing that the completed crime of possession was a general intent crime, and attempted possession was a specific intent offense.

The prosecutor orally responded to the motion. She renewed her request to have the information amended to include a charge of attempted possession of a controlled substance. The trial court denied the motion for reconsideration. The trial court felt the testimony of the witnesses established attempted possession of a controlled substance. The trial court also ruled that the motion to amend the information was denied because it was moot.

The jury was instructed that in order to find defendant guilty of attempted possession of a controlled substance, it must find defendant took a direct but ineffective step toward possessing Dilaudid, and intended to possess Dilaudid. Additionally, they were instructed that it must be proven (1) that defendant unlawfully possessed a

12

controlled substance; (2) defendant knew of its presence; (3) defendant knew of the substance's nature or character as a controlled substance; (4) the controlled substance was Dilaudid; and (5) the controlled substance was a useable amount. The jury was also instructed on theft from an elder, which required that the Dilaudid be taken from an elder.

B.    ATTEMPTED POSSESSION IS NOT A LESSER INCLUDED OFFENSE
OF POSSESION

It is clear that attempted possession of a controlled substance is not a lesser included offense of possession of a controlled substance. "Although the evidence may fail to support a conviction of the charged offense, the trial court has discretion to substitute a lesser included offense for the jury's consideration. '[I]n determining a motion pursuant to Penal Code section 1118.1, the trial judge is entitled to consider whether, although the evidence is insufficient to establish the commission of the crime specifically charged in the accusatory pleading, the evidence is sufficient to sustain a conviction of a necessarily included offense which the evidence tends to prove. A defendant may be convicted of a lesser offense if he was charged with a felony which included the lesser offense.'" (*People v. Powell* (2010) 181 Cal.App.4th 304, 311.)

"The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character . . . .'" (*People v. Martin* (2001) 25 Cal.4th 1180, 1184.) "It has been observed that the statute proscribing the unlawful possession of controlled substances [citations] 'makes possession illegal without regard to the specific intent in possessing the substance.'"

13

(*Ibid.*)  On the other hand, attempted possession of a controlled substance requires "a specific intent and an ineffectual overt act directed at its consummation."  (*People v. Gibson* (1949) 94 Cal.App.2d 468, 470.)  "[W]hen the completed offense is a general intent crime, an attempt to commit that offense does not meet the definition of a lesser included offense under the elements test because the attempted offense includes a specific intent element not included in the complete offense."  (*People v. Ngo* (2014) 225 Cal.App.4th 126, 156-157, fn. omitted; see also *People v. Bailey*, *supra*, 54 Cal.4th at p. 749 [attempted escape is not a lesser included offense of escape because escape is a general intent crime].)

Here, the trial court dismissed the greater offense of possession of Dilaudid, because the prosecution failed to present evidence that the substance in Eiko's CADD pain pump was, in fact, Dilaudid; the court then substituted what it believed was the lesser included offense of attempted possession of a controlled substance.  It is undisputed by the parties on appeal that attempted possession of a controlled substance is not a lesser included offense of possession of a controlled substance.  As such, the trial court erred by substituting the lesser offense for the greater offense.

The People, relying on the language in Penal Code section 1009, contend reversal of defendant's conviction of attempted possession of a controlled substance is not mandated.  The People contend since a properly instructed jury found defendant guilty of the crime of attempted possession of a controlled substance, this court can correct the trial court's erroneous order finding the motion to amend the information moot, and order the information amended.

14

Penal Code section 1009 provides in relevant part: "An indictment, accusation or information may be amended by the district attorney, and an amended complaint may be filed by the prosecuting attorney, without leave of court at any time before the defendant pleads or a demurrer to the original pleading is sustained. The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order the case submitted to the same or another grand jury, or a new information to be filed."

"Under [Penal Code] section 1009, the People may amend an information without leave of court prior to entry of a defendant's plea, and the trial court may permit an amendment of an information at any stage of the proceedings." (*People v. Lettice* (2013) 221 Cal.App.4th 139, 147.) "[Penal Code s]ection 1009 authorizes amendment of an information at any stage of the proceedings provided the amendment does not change the offense charged in the original information to one not shown by the evidence taken at the preliminary examination. If the substantial rights of the defendant would be prejudiced by the amendment, a reasonable postponement not longer than the ends of justice require may be granted. . . . Similarly, where the amendment makes no substantial change in the offense charged and requires no additional preparation or evidence to meet the change, the denial of a continuance is justified and proper." (*People v. Winters* (1990) 221 Cal.App.3d 997, 1005.) "The questions of whether the prosecution should be permitted to amend the information and whether continuance in a given case should be granted are

15

matters within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a clear abuse of discretion." (*Id.* at p. 1005; see also *People v. Witt* (1975) 53 Cal.App.3d 154, 165, overruled on other grounds in *People v. Posey* (2004) 32 Cal.4th 193.)

Initially, respondent provides no authority to this court other than the language of Penal Code section 1009 that we can order amendment of the information on appeal after conviction. Numerous courts have concluded that amendment to the information can occur "at any stage of the proceeding, up to and including the close of trial." (*People v. Graff* (2009) 170 Cal.App.4th 345, 361; see also *People v. Flowers* (1971) 14 Cal.App.3d 1017, 1020.) We have found no authority to support respondent's position that we have authority to order the trial court to amend the information after conviction.

Further, it is clear and undisputed by the People that this court reviews the trial court's ruling on a motion to amend the information for abuse of discretion. Here, the trial court made no ruling on the motion to amend the information finding that it was moot. We have nothing to review. This court cannot engage in de novo review of the request by the People to amend the information, determining that the amendment does not prejudice defendant's substantial rights, and that it does not charge an offense different than that shown at the preliminary hearing. Those matters are left to the sound discretion of the trial court.

The People contend that had the trial court been aware that attempted possession of a controlled substance was not a lesser included offense of possession of Dilaudid, it would have amended the information because it had already concluded that defendant

16

had notice of the attempt charge. However, the trial court found defendant had notice because attempted possession was a lesser included offense of possession. Further, defendant reasonably argues that the defense strategy would have been different had defendant been aware that the charge was attempted possession, rather than the general intent crime of possession.

Further, even if we were to consider we can order the trial court to amend the information, the People do not explain the procedure the trial court would follow. "Where an information is amended, regular and orderly procedure requires the defendant be rearraigned and required to plead thereto before trial." (*People v. Walker* (1959) 170 Cal.App.2d 159, 164.) Would defendant be rearraigned in the trial court? Would defendant be able to enter a plea of not guilty and the trial court would immediately find her guilty? Other courts have held that when a "minor change" that does not "alter the nature of the charge alleged," is made to the information, it is not error to fail to arraign the defendant on the amended information and take a plea. (*People v. McQuiston* (1968) 264 Cal.App.2d 410, 417.) Should we conclude this amendment was only a minor change that does not require defendant be rearraigned? The People provide no argument as to the procedure that should be followed.

Procedurally, this court has no ability to correct the errors committed by the trial court. The trial court erroneously determined that attempted possession of a controlled substance was a lesser included offense of possession of a controlled substance. It thereafter determined the motion to amend the information was moot, failing to exercise its discretion as to whether amendment to the information was appropriate.

17

For the first time at oral argument, the People contend reversal is not required because the erroneous instruction to the jury on attempted possession of a controlled substance was not prejudicial. The People insist that the decision to reverse defendant's conviction amounts to "form over substance" as it was clear the evidence supported the attempted possession charge despite the lesser related offense not being charged in the information.

"'No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.'" (*People v. Thomas* (1987) 43 Cal.3d 818, 823.) "[T]he role of the accusatory pleading is to provide notice to the defendant of the charges that he or she can anticipate being proved at trial. 'When an accusatory pleading alleges a particular offense, it thereby demonstrates the prosecution's intent to prove all the elements of any lesser necessarily included offense. Hence, the stated charge notifies the defendant, for due process purposes, that he must also be prepared to defend against any lesser offense necessarily included therein, even if the lesser offense is not expressly set forth in the indictment or information.'" (*People v. Anderson* (2006) 141 Cal.App.4th 430, 445.)

"'It is fundamental that "When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. [Citations.] This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused be advised of the charges against him in order that

18

he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.'"'" (*People v. Parks* (2004) 118 Cal.App.4th 1, 5-6 (*Parks*).) "'However, an exception to this rule has long been recognized in cases where a defendant expressly or impliedly consents to have the trier of fact consider a nonincluded offense: "Since a defendant who requests or acquiesces in conviction of a lesser offense cannot legitimately claim lack of notice, the court has jurisdiction to convict him of that offense."'" (*Id.* at p. 6; see also *People v. Toro* (1989) 47 Cal.3d 966, 975, disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558 [the due process notice requirement precludes conviction of a lesser related offense when the defendant has not consented to it being considered by the trier of fact].)

In *Parks*, the defendant was convicted of a lesser related offense that was not charged in the Information. The court found, "[The defendant] lacked 'warning or notice that he was subject to the charge of the lesser related offense.' [Citation.] Because it cannot be said that [defendant] consented to the trial court's consideration of lesser related offenses, the conviction must be reversed." (*Parks*, *supra*, 118 Cal.App.4th at p. 8.)

Here, defendant was convicted of attempted possession of a controlled substance, a charge not included in the information and which was a lesser related offense to the charged possession count. Defendant objected to the amendment to the information on the grounds it would violate her rights to due process and a fair trial. Defendant strenuously objected to the instructions on attempted possession arguing it was not a lesser included offense and had not been charged in the information. Defendant clearly

19

did not agree to the change to the charges by the trial court. As such, based on the foregoing, the conviction of the lesser related offense cannot stand.

We have found no case to support the People's argument that since the evidence supported the lesser related offense, any failure to charge the defendant in the Information was harmless. However, since the attempted possession charge was not included in the Information, the trial court lacked jurisdiction to convict defendant of the lesser related offense. (*Parks*, *supra*, 118 Cal.App.4th at pp. 5-6.) Reversal is required.

Also at oral argument, defendant asked this court to find she cannot be retried on the charge of attempted possession of a controlled substance because it would violate double jeopardy principles. She contends since she was charged with and acquitted of possession of a controlled substance, she cannot be retried for attempted possession, which is based on the same facts and circumstances. "[Penal Code s]ection 654, subdivision (a) provides that '[a]n acquittal or conviction and sentence under any one [provision of law] bars a prosecution for the same act or omission under any other.' In *Kellett v. Superior Court* (1966) 63 Cal.2d 822, 827 [], the court stated that '[w]hen, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence.'" (*Sanders v. Superior Court* (1999) 76 Cal.App.4th 609, 614, fn. omitted.)

20

"Whether *Kellett* applies must be determined on a case-by-case basis. [Citation.] Appellate courts have adopted two different tests to determine a course of conduct for purposes of multiple prosecution." (*People v. Valli* (2010) 187 Cal.App.4th 786, 797.) The first test involves crimes committed at different times and places (*Id.* at p. 797) which is not relevant here. Further, courts have applied an evidentiary test. In *People v. Hurtado* (1977) 67 Cal.App.3d 633, the court set forth the test as follows: "More specifically, if the evidence needed to prove one offense necessarily supplies proof of the other, we concluded that the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds." (*Id.* at p. 636, fn. 1.)

Recently the California Supreme court reiterated the rule in *Kellett*. It found, "*Kellett* held that when 'the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence.'" (*People v. Goolsby* (2015) 62 Cal.4th 360, 366.)

In *Goolsby*, the Supreme Court found no problem with a retrial on a lesser related offense when the greater offense was reversed for insufficient evidence because the jury had been instructed with the lesser related offense, even though it was not charged in the information, and the defendant did not object to the instruction. Further, since the jury found the defendant guilty of the greater charge, and did not reach the lesser offense, the

lesser offense was left "unresolved" and retrial was appropriate. (*People v. Goolsby*, *supra*, 62 Cal.4th at pp. 366-367.}

This case differs from *Goolsby*. Here, defendant objected to amendment of the Information or lesser related instructions. The prosecutor had to charge defendant in the information with both possession and attempted possession of a controlled substance based on the same facts in the same proceeding. Retrial is not allowed under the principles or *Kellett v. Superior Court*, *supra*, 63 Cal.2d 822 and Penal Code section 654.

We must reverse defendant's conviction; retrial is barred under Penal Code section 654 and *Kellett v. Superior Court*, *supra*, 63 Cal.2d 822.[3]

## DISPOSITION

The judgment is reversed and retrial is barred under Penal Code section 654 and *Kellett v. Superior Court*, *supra*, 63 Cal.2d 822.

CERTIFIED FOR PUBLICATION.

MILLER
                                                                 J.

We concur:

HOLLENHORST
                Acting P. J.

McKINSTER
                J.

---

[3] Since we conclude reversal of the conviction is necessary, we need not address whether the trial court erred by admitting the prior acts evidence.