Filed 6/12/25  P. v. Nguyen CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DUNG TUAN NGUYEN,

    Defendant and Appellant.

E083046

(Super.Ct.No. SWF1900652)

OPINION

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.

Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Anastasia

Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

1

In June 2018 defendant and appellant Dung Tuan Nguyen and his long-term girlfriend met Jane Doe at the pool in their apartment complex. Doe drank two to three alcoholic beverages while at the pool, which were given to her by defendant. Defendant and his girlfriend invited Doe over for dinner later that evening. While at dinner, Doe drank six drinks. Defendant walked Doe back to her apartment and insisted he wanted to go in her apartment. Once inside her apartment, Doe claimed she "blacked out" and defendant had sexual intercourse with her while she was unconscious. Defendant was convicted of rape of an unconscious person.

Defendant claims on appeal that his conviction of violating Penal Code[1] section 261, subdivision (a)(4), unlawful sexual intercourse with an unconscious person, was not supported by substantial evidence. In addition, the trial court erred by failing to instruct the jury with the lesser included offense of sexual battery.

## PROCEDURAL HISTORY

Defendant was charged in count 1 of a first amended information by the Riverside County District Attorney with rape of an unconscious person (§ 261, subd. (a)(4)), and in count 2 with forcible rape (§ 261, subd. (a)(2)). The jury found defendant guilty of count 1, rape of an unconscious person but was unable to reach a verdict on count 2. Count 2 was dismissed pursuant to section 1385. Defendant was sentenced to the midterm of six years to be served in state prison.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTUAL HISTORY

## A.     PROSECUTION CASE-IN-CHIEF

In June 2018 Jane Doe lived in Building I at the Waterstone Murrieta apartment complex in Murrieta.  On June 8, 2018, at around 4:00 or 5:00 p.m., Doe went to the pool at the apartment complex by herself.  While there, she met—for the first time—defendant and his family, including his long-term girlfriend, Cynthia.  Defendant and his family were having food and drinks at the pool, and they invited her over to join them.  They served her three or four drinks—rum and coke—at the pool.  Defendant made the drinks and they were "strong." Doe felt "pretty tipsy" while at the pool.  Cynthia invited Doe to their apartment for dinner.

They all left the pool around 7:00 or 8:00 p.m.  Doe went back to her apartment to change.  She put on black leggings with no underwear.  She went to defendant's apartment, which was in Building A, at 9:00 p.m.  She felt more sober when she went to their apartment.  She described their apartment as having a "family environment." Defendant, Cynthia and their children were at the apartment.  Cynthia was very welcoming and sweet to Doe.  Doe told them she did not have any family in California and Cynthia told her that she would be like an older sister to her.  Doe had more drinks at their apartment.  Doe had two mixed drinks—rum and coke—that defendant made for her.  She had tequila shots and Hennessey liquor.  She also had a mixed drink with tequila.  She estimated she had six drinks while at defendant's apartment.  She smoked a cigarette on the balcony with defendant.  She decided it was time to leave at around

3

midnight. Nothing occurred at the apartment that made her uncomfortable around defendant.

When she decided to leave, Cynthia and defendant offered to walk her back to her apartment, but Doe stated she was fine to walk home by herself. They insisted that defendant walk her home. She was intoxicated but still coherent. She was aware of her surroundings. She just wanted to go to bed. Defendant walked with Doe back to her apartment. During the walk, she felt defendant touch her buttocks several times. Doe felt uncomfortable and told defendant not to touch her. Doe was very uncomfortable and told him she did not want him to walk her all the way to her apartment. Defendant insisted that he was going to walk her back to her apartment. When they got to her apartment, she told him she did not want him to go upstairs to her apartment. He insisted on going upstairs with her.

When they got to the front door of Doe's apartment, she opened the door and he "pushed his way in." After defendant pushed Doe into her apartment, she stated "It's pretty blurry. I really don't remember." She did recall defendant trying to kiss her while they were in the dining room. Defendant said to her, " 'Oh, come on, baby. You know you want it.' " She told him " 'No, you're married. You have a wife.' " He responded, " 'Come on. She's not going to know.' " He kept trying to kiss her. She told him no at least five times. She finally got away from defendant and sat on the couch. She suggested they smoke a cigarette on the balcony to change his mindset of wanting to kiss her. She could not remember if they went out and smoked a cigarette.

4

The next thing that Doe remembered was waking up on the couch naked from the waist down and the front door to her apartment was open. She was alone. She never left her apartment door open; she always closed and locked it. She found her pants on the floor in the bathroom. She did not recall taking them off; she did not recall defendant taking them off. When she woke up she was confused and felt as though something was not right. It "clicked" that she had been raped. She was in shock and was numb. She felt like there was a "missing piece" in the evening. She recalled that she had pushed him off of her while he was trying to kiss her while they were standing. She felt like she had been raped because her vagina was sore like she had just had sex. She did not remember defendant having sex with her that night.

She called her friend Joe and told him that she had been raped. He was unable to come over to her house. She was crying and in a panic while talking to Joe. Doe took a shower and went to bed because she was confused about everything that happened and just wanted the night to end. She went to bed in her bedroom.

Doe was awakened by police officers in her bedroom at approximately 1:20 a.m. She was still drunk when the officers showed up at her apartment. She was confused and scared. She was confused as to why the police were in her apartment because she had not called them. She asked them what they were doing in her apartment. She initially told them she did not need any help, but she was confused because she had not called the police. They left her apartment but she then chased them down in the parking lot and said that she had been sexually assaulted.

5

Doe agreed to a sexual assault exam. She agreed to the test because she was "blacked out" when it happened, and she woke up naked and sore. She had an idea about what had happened but wanted testing to confirm that she had been raped. The exam took several hours. The exam made her feel dirty and violated. She was sad and heartbroken. She told the nurse who examined her that she pushed defendant away when he tried to kiss her. She told the nurse that she kept telling defendant "no." She told the nurse that defendant pushed her onto the couch and then she blacked out.

Doe could not recall that she told officers on June 8, 2018, that defendant had pushed her onto the couch. She refreshed her memory with a transcript of her statement to police and recalled that she told them she was pushed onto the couch. At trial, she now recalled that he did not push her onto the couch and she sat on her own accord. She recalled that she told officers that night that she woke up while defendant was having sex with her but at trial, she could not remember that happening. When she talked to the officers, she believed it to be the truth at that time. She also told officers that she was trying to push defendant off of her; she tried to fight him off when she woke up to him having sex with her. She stated that when she talked to the officers, she told them the truth and what was fresh in her memory at that time. By the time of trial, she did not remember waking up to defendant having sex with her.

Doe was asked, "Do you remember telling the officers that after you woke up to the defendant having sex with you, that you then tried to kick him off of you?" She responded, "Yes." She was asked, "Is that what happened," and she responded, "To the

6

best of my memory, yes." While talking to the police, she was sometimes uncertain about her answers. She was confused about everything that had happened.

Doe recalled that she told one of the officers that night " 'I remember laying on the couch and he, like, pulled me towards him and he was, like, having sex with me and then I pushed him off of me and I ran to the bathroom.' " At trial, she had no memory of sex. Doe could just recall fragments of the night. Doe was "pretty sure" that defendant took her clothes off; she did not think she took them off for him. She insisted she was "blacked out" when defendant raped her and she did not know if he took off her clothes. Doe told the officers who responded that she was "pretty sure" she did not give consent. At trial, she insisted she did not give consent and was still confused while the officers were at the apartment. She told officers that on the way back to her apartment, she was not "super intoxicated;" she was still aware of her surroundings.

Doe recalled that prior to leaving defendant's apartment, she started feeling really drunk. She was still drunk and tired when she was woken up by the officers in her room. She recalled telling the officers that she woke up to defendant having sex with her, but at trial she did not recall that actually happening. She told officers that defendant had ejaculated inside her but at trial she did not recall that actually happening.

Doe recollected that when she blacked out, her clothes were on. The last thing that she remembered was telling defendant to get off of her.

Joe Benson was friends with Doe. He received a late-night phone call, around 1:00 a.m., from Doe, on June 8, 2018. She was hysterical and crying. She had a hard time calming down enough to give all the details to Joe. She eventually told Joe that

someone in her apartment complex had sexually assaulted her. Joe was unable to drive to her apartment because he had been drinking but told her he was going to call the police. Doe was clear she told the person "no." She told him that the man was a neighbor and that she was scared. He thought she would not call the police on her own because she was scared.

Murrieta Police Officer Evan Power was on patrol duty on June 8, 2018. At around 1:21 a.m., he received a call to respond to the Waterstone Apartments in Murrieta regarding a report of a rape. He was with another officer. They arrived at 1:30 a.m. They found Doe's apartment and knocked on the door. When they got no response, they entered through the unlocked door to the apartment. When they were inside, they announced their presence but there was no response. They were concerned that someone was in distress based on the nature of the call. They searched the apartment and found Doe in her bed. She appeared half awake and incoherent. It took her some time to get out of bed and go into the living room with them. Doe told them she did not want to speak with the police and that she had not been raped. The officers went back to their patrol cars. She came out of her apartment and told the officers she wanted to talk to them.

Doe spoke with both officers in the living room. Doe at times did not appear to understand the questions being posed to her and the officers had to repeat them. Officer Power thought she was under the influence of alcohol because she was slurring her words and had bloodshot red eyes. She told the officers that defendant had walked her back to her apartment and then forced himself on her multiple times. Doe told Officer Power that

8

she had been on the couch and defendant pulled her towards him. He had sex with her, she pushed him off and she ran to the bathroom. She also said that she woke up to him having sex with her. She told defendant no and to get off several times. She told Officer Power that defendant was not wearing a condom and ejaculated inside of her. She kicked him off her after he ejaculated, she ran to the bathroom and called Joe.

Officer Power transported Doe to the hospital for her to undergo a sexual assault exam. He also gave her a breath test to determine her blood alcohol content because he believed that she was under the influence. He noticed that she had been staggering as she walked. She was given the test at 2:52 a.m. and she had a .189 BAC. Another test was given to her at 2:54 a.m. and she had a .193 BAC.

Yolanda Marine was a Sexual Assault Response Team (SART) nurse. She was trained to examine rape victims and collect evidence. Marine explained that a SART exam could determine if sex occurred but not whether it was consensual.

Marine examined Doe on June 8, 2018, at approximately 3:30 a.m. She advised Doe that the examination was voluntary and could be stopped at any time. Doe told Marine that defendant had insisted on walking her home, he tried to kiss her, and she tried to push him away. He said to her, " 'Come on, baby, you know you want it.' " He pushed her on the couch and then she blacked out. She did not remember anything about having sex. She stated that she had periods during the evening that she did not recall. Marine examined Doe's body. She also took swabs from outside and inside Doe's vaginal area, and her buttocks area, for possible DNA. Doe was naked and had her legs in stirrups during a part of the exam. The entire exam took over two hours. There were

no documented injuries to Doe. She had no visible injuries to her vaginal area. The swabs taken from Doe's vagina matched DNA that was taken from defendant.

Murietta Police Sergeant John Therien helped with the investigation. On August 13, 2018, Sergeant Therien went to defendant's apartment. He recorded an interview with defendant at his apartment that was played for the jury. Defendant was home alone. Defendant remembered meeting Doe at the pool while he was with his wife. He remembered walking her back to her apartment. He insisted he never went inside her apartment. He denied that he ever had sex with Doe. He asserted his DNA would not be found on her. Defendant told Sergeant Therien to ask Cynthia whether he came right back to his apartment after walking Doe to her apartment. Sergeant Therien told defendant that Doe was claiming that they had sex. Defendant responded that he had not, that she lived right near them and he would not be that stupid. Sergeant Therien told defendant that Doe was claiming he pushed his way into her apartment and forced her to have sex. He adamantly denied they had sex. Defendant insisted there was something wrong with Doe.

After the interview, a search warrant was obtained for defendant's DNA. Defendant initially refused to give a DNA sample and Sergeant Therien had to go back to his apartment on March 14, 2019. Defendant agreed to give a sample and Sergeant Therien again asked him questions about the night of June 8. The interview was recorded and played for the jury. Defendant claimed that Doe had lied to the police. It was "her words against mine." He also said, "So ain't no rape about me." He could get any woman that he wanted and did not need to rape anyone. Sergeant Therien commented,

10

"Yeah but you told me you didn't do anything with her." Defendant responded, "I didn't do it. If I did, maybe you know she got me." He also told Sergeant Therien "you can't force somebody to have sex with you. [¶] . . . [¶] . . . If a woman tell you no they mean no." He had nothing to hide and it was her words against his. Defendant never told Sergeant Therien that he had consensual sex with Doe.

B.    DEFENSE

Nicole Frankle was a family nurse practitioner who was SART-certified. She had performed between 700 to 800 SART exams and testified in court about those exams approximately 70 times. She started the SART examination unit at the hospital where Doe was given her exam. She explained the SART examination process. She stated it was not the job of a nurse during a SART exam to say whether an assault happened or did not happen.

She reviewed the SART exam of Doe. She also reviewed the photographs taken during the exam. She agreed with the findings of Marine. There were no visible injuries. It was consistent with a sexual encounter but not evidence that it was a sexual assault. She acknowledged that nonconsensual sex would not necessarily show injuries based on the vagina's stretching to avoid injury. In a majority of sexual assault exams, there were no injuries.

Defendant chose to testify because everything that Doe had said was a lie. He and Cynthia were not married but had been together for a long time. Cynthia had several children and he had children of his own.

Defendant, Cynthia and her children went to the pool on June 8 around 2:00 p.m. He did not bring alcohol to the pool. He denied that he was drinking that day. Doe was at the pool and was staring at them. He offered her some food and she joined them. They gave her water and soda; they gave her no alcohol. They had a good conversation. He never saw Doe drink her own alcohol. Cynthia invited Doe to their house for dinner.

Doe arrived at the apartment around 6:40 p.m. She remained in the apartment for about two hours. Defendant was drinking beer and rum. He insisted he only served Doe one rum and coke and his wife made her some sort of cocktail with tequila. Doe also was drinking beer. He did not believe that she was intoxicated.

Defendant went outside on the balcony to smoke a cigarette and Doe joined him. He gave her a cigarette. They were both flirting with each other. Cynthia and defendant both agreed that defendant should walk Doe home to make sure she was safe. He insisted that the apartment complex was not safe at night. He did not touch her bottom or make any sexual advances on the walk to her apartment.

Doe invited him into her apartment. They were talking and then started kissing. She never told him to stop kissing her. They had sex on rugs that were on the floor in front of the couch. She had taken her pants off in the bathroom. He did not rape Doe. She never appeared to be intoxicated and she was never unconscious. After they had sex, he kissed her and told her he would see her later.

Defendant told Detective Therien that he did not have sex with Doe because he was with Cynthia, and he had made a mistake having sex with Doe. He did not want Cynthia and their children to know. Cynthia was not home when he spoke with Detective

12

Therien. The second time he spoke with Detective Therien his daughter was home and he did not want her to know he had sex with Doe. He had also insisted that when he spoke with Sergeant Therien, he told him that he saw Doe drinking, but never told him that Doe was drunk that night. Defendant had prior convictions of burglary in 1994 and 2006, and grand theft of an automobile in 2011.

## DISCUSSION

### A.    INSUFFICIENT EVIDENCE OF RAPE OF UNCONSCIOUS PERSON

Defendant contends there is insufficient evidence to support his conviction of rape of an unconscious person. He insists that Doe's four different accounts of what occurred that night while they were having sex showed that she was not, in fact, "*unconscious or asleep* or *not aware that the act is occurring*," or that he understood her to be unconscious.

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the

13

trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.) "Because we must draw all inferences in support of the judgment, [a] defendant bears an 'enormous burden' when challenging the sufficiency of the evidence." (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.)

The crime of rape of an unconscious person requires proof of (1) an act of sexual intercourse, (2) where the victim "is at the time unconscious of the nature of the act," and (3) "this is known" by the defendant. (§ 261, subd. (a)(4).) "It is settled that a victim need not be totally and physically unconscious in order for [section 261, subdivision (a)(4),] defining rape as an act of sexual intercourse accomplished with a person who is at the time 'unconscious of the nature of the act' to apply." (*People v. Ogunmola* (1987) 193 Cal.App.3d 274, 279; see *People v. Pham* (2009) 180 Cal.App.4th 919, 928.)

Based on all the evidence presented to the jury in this case, there was substantial evidence to support defendant's convictions of rape of an unconscious person. Doe admittedly provided several versions of what occurred that night, but the jury could reasonably conclude that it was as a result of her intoxication. When police first arrived at Doe's apartment, she was asleep and woke to several police officers in her room. She was confused and scared. She denied that she had been raped and Officer Power and the other officer decided to leave. She was still drunk and tired.

Doe chased the officers to the parking lot, insisting she wanted to talk to them. Officer Power reported that Doe's eyes were bloodshot and that she was slurring her words. She told Officer Power that she and defendant had been sitting on the couch, he

14

pulled her toward him and then got on top of her. She stated she woke up to them having sex, he ejaculated inside of her and she pushed him off. She was still confused when speaking with Officer Power.

Doe told Marine, the SART nurse, that defendant tried to kiss her but Doe told defendant no. She told Marine that defendant pushed her on the couch and she blacked out. She could not recall having sex.

At trial, Doe testified that she had three drinks at the pool and was tipsy. When she went to defendant's apartment, she had six drinks, consisting of mixed drinks and shots. She was blurry and fuzzy when defendant walked her back to her apartment. Defendant pushed his way into her apartment. She told him no five times when he tried to kiss her. They were sitting on the couch and she then blacked out. When she woke up, she was alone and the front door to the apartment was wide open. She had no clothes on below her waist and her vagina was sore. She found her pants in the bathroom. She had no recollection of having sex.

Doe consistently testified that at some point while defendant was putting his penis in her vagina that she blacked out and could not resist defendant. She only recalled "fragments" of the night. The jury could reasonably infer from her testimony that she recalled fragments, and after the passage of time, only recalled being on the couch and then waking up to defendant having left the apartment; that she lacked the requisite consciousness to consent or be aware of the nature of the act when defendant had sex with her.

15

Defendant argues that Doe was awake when the sex occurred and that she was not that intoxicated. However, Doe's testimony established that at some point while they were having sex, she blacked out. Defendant is asking this court to reweigh the evidence and reassess Doe's credibility, which is not this court's role on review. (See *People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1005 [court refuses to reweigh the evidence to determine that victim was not unconscious].) The jury could reasonably infer that Doe was unconscious while defendant had sexual intercourse with her.

Moreover, the evidence reasonably supported that defendant was aware that Doe was unconscious both based on the number of drinks she consumed in his apartment and also based on him telling Sergeant Therien that she was drunk that night. Further, Doe had resisted defendant's advances earlier in the night and the jury could reasonably infer that he was able to have sex with Doe because she was unconscious.

Defendant's statement to Sergeant Therien that he never entered Doe's apartment also supported that he knew she was unconscious when they had sex. In *People v. Lewis* (2024) 100 Cal.App.5th 349, a case involving kidnapping for purposes of rape,[2] the defendant took the victim from a bar where he was aware she had been drinking and took her to a park where he had sex with her. The victim was found passed out in the park the following day and could not recall anything after leaving the bar. The defendant told the police that he and the victim never had sex. (*Id.* at pp. 352-355.) The appellate court

_____

[2] Kidnapping for purposes of rape requires that a defendant intend to rape the victim when movement occurred, the victim was too mentally impaired to give consent to the movement and the defendant should have known that the victim was mentally impaired. (*People v. Lewis*, *supra*, 100 Cal.App.5th at p. 359.)

16

noted, "The only way his lie would have any possibility of succeeding would be if [the victim] had been unconscious or had no memory of events after she and [the defendant] left [the bar]. In other words, unless [the defendant] knew [the victim] was largely unconscious when they had sex, and thus would be incapable of refuting his story, it is hard to imagine why he would have denied having sex with her. But that is what he did." (*Id.* at p. 359.) Similarly, here, defendant initially denied having sex with Doe or even being in her apartment. As in *Lewis*, this was only feasible if Doe was unconscious and could not recall them having sex.

Based on the foregoing, there was substantial evidence that Doe was unconscious when the rape occurred and that defendant was aware she was unconscious to support his conviction of rape of an unconscious person.

B.      INSTRUCTION ON LESSER OFFENSE OF SEXUAL BATTERY

Defendant's contention is somewhat unclear. Defendant states that a new trial is required because the trial court failed to instruct the jury on sexual battery which he contends is a lesser included offense of rape of an unconscious person. He additionally presents authority that simple battery is a lesser included offense of rape of an unconscious person. However, after citing to authority that simple battery is a lesser included offense, he argues that the court should find "that sexual battery is a lesser included offense of rape of an unconscious person."[3] He also provides that such failure

_____

[3] We note that there is a split of authority as to whether battery is a lesser included offense of rape of an unconscious person. (See *People v. Hernandez*, *supra*, 200 Cal.App.4th at p. 1006 ["[B]attery is not a lesser included offense of rape of an

*[footnote continued on next page]*

17

was prejudicial, based on the argument that at least one juror may have determined that he did not rape Doe, but merely committed sexual battery. The People state in their brief that defendant is arguing only that the lesser included offense of sexual battery should have been given to the jury and that he does not argue on appeal that the jury should have been instructed with simple battery. Defendant has not filed a reply brief in response so we accept that defendant is only arguing on appeal that the lesser offense of sexual battery should have been given sua sponte by the trial court.

1. *ADDITIONAL FACTUAL HISTORY*

During a discussion of the instructions, the prosecutor objected to the request by defendant for the lesser offense of section 242, simple battery. The prosecutor argued that it was not a lesser offense of count 1, rape of an unconscious person. The prosecutor argued further that since there was no dispute there was sexual intercourse, then there was no lesser of battery for count 2, rape by force. The trial court asked that defendant explain the position on the lesser offenses. Defendant's counsel stated, "It is my understating that the rape of an unconsciousness [*sic*] woman, which is Count 1 under the amended information, there wouldn't be a lesser that goes along with that." However, defendant's counsel argued that battery and assault were lesser offenses for the rape by force. The prosecutor responded that the touching was "the penis going into the vagina,

---

unconscious person"]; cf. *People v. Miranda* (2021) 62 Cal.App.5th 162, 176 ["Any sexual act upon an unconscious victim is also a battery"], review granted on another issue on June 16, 2021, S268384, and then dismissed and remanded on January 22, 2025.) We need not address the issue as defendant is only arguing that the jury should have been instructed on sexual battery.

18

that is sexual. They cannot find it's a battery or assault." The trial court denied the instruction on the lesser offense of section 242.

        2.    *ANALYSIS*

    " ' "[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." ' " (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1247.) "Where the accusatory pleading, as in this case [AOB 90], tracks the statutory language rather than reciting factual details of the offense, 'only the statutory elements test is relevant in determining if an uncharged crime is a lesser included offense of that charged.' [Citation.] We determine de novo whether one crime is a lesser included offense of another." (*Ibid.*)

    "The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.] In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " (*People v. Bailey* (2015) 54 Cal.4th 740, 748.)

    In 2019, the elements required to prove rape of an unconscious person were that: (1) the defendant had sexual intercourse with the victim; (2) the defendant was not married to the victim at the time; (3) the victim was unable to resist because she was unconscious of the nature of the act; and (4) the defendant knew the victim was unable to

19

resist because she was unconscious of the nature of the act. (Former § 261, subd. (a)(4).)**4** Rape of an unconscious person is a general intent crime. (*People v. Dancy* (2002) 102 Cal.App.4th 21, 37.)

The elements of sexual battery at the time of defendant's trial as outlined in section 243.4, subdivision (e)(1), provide that, "Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, . . . is guilty of misdemeanor sexual battery, punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail not exceeding six months, or by both that fine and imprisonment."**5** "Sexual battery is a specific intent crime. It consists of touching an intimate part of another, against the victim's will, committed for the purposes of sexual arousal, gratification or abuse." (*People v. Chavez* (2000) 84 Cal.App.4th 25, 29.)

"Sexual battery is a specific intent crime, while rape requires only general intent. . . . Generally, a crime which requires specific intent cannot be a lesser included offense of a general intent crime. . . . We find that the crime of sexual battery is not necessarily included within the crime of rape." (*In re Alberto S*. (1991) 226 Cal.App.3d

---

**4** The section was later amended to eliminate the element that the parties were not married.

**5** Effective January 1, 2025, the section added "or any person who, for the purpose of sexual arousal, sexual gratification, or sexual abuse, causes another, against that person's will, to masturbate or touch an intimate part of either of those persons or a third person." (Stats. 2024, c. 981 (S.B. 442) § 1, eff. Jan. 1, 2025.)

1459, 1464; see also *People v. Hamernik* (2016) 1 Cal.App.5th 412, 423 [" '[W]hen the completed offense is a general intent crime, an attempt to commit that offense does not meet the definition of a lesser included offense under the elements test because the attempted offense includes a specific intent element not included in the complete offense.' "].) Sexual battery requires the specific intent to touch the intimate part of another with the specific intent of sexual arousal, gratification or abuse. Rape of an unconscious person is a general intent crime not requiring the same showing. As such, sexual battery is not a lesser included offense of rape of an unconscious person requiring that the trial court sua sponte give an instruction on sexual battery. The trial court did not error by failing to so instruct the jury.

## DISPOSITION

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

McKINSTER _____
Acting P. J.

FIELDS _____
J.

21