Filed 9/25/20  P. v. Anderson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LENORE NICOLAS ANDERSON,<br><br>Defendant and Appellant. | B293736<br>(Los Angeles County<br> Super. Ct. No. MA072499) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed as Modified.

Myra Sun, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Lenore Nicolas Anderson appeals from a judgment of conviction. By information, he was initially charged with battery causing serious bodily injury (§ 243, subd. (d), count 1),[1] and vandalism over $400 (§ 594, subd. (a), count 2). During trial, the court granted the prosecution's motion to amend the information to add a count 3, assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)).

The jury found defendant guilty of the amended assault charge in count 3. On count 1, the jury found defendant guilty of the lesser-included offense of misdemeanor simple battery (§ 242), and on count 2, the jury found defendant guilty as charged.

In a bifurcated proceeding, the trial court found that defendant had suffered a prior strike under the Three Strikes law (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(d)), a prior serious felony conviction (§ 667, subd. (a)(1)), and two prior prison terms (§ 667.5, subd. (b)). The court sentenced defendant to an overall term of 10 years four months imprisonment, comprised of the upper term of four years on count 3, doubled for the prior strike, plus a consecutive term of one year four months on count 2, and one year for one prior prison term enhancement (the court did not impose a sentence on the second enhancement, and noted that it would strike the second enhancement if its failure to impose the enhancement were incorrect as a matter of law).

On appeal, defendant contends the trial court erred when it granted the People's motion to add count 3, when it denied his motion

---

[1]     Unspecified references to statutes are to the Penal Code.

2

for acquittal (§ 1118.1) on that charge, and when it denied his motion for a new trial (§ 1181, subd. (6)). We find no error.

He also contends the trial court abused its discretion and violated his right to due process by denying him good-time and work-time pre-sentence custody credits (§ 4019). We agree (as the People concede) that the court abused its discretion by withholding 82 days of work-time custody credit. But we disagree with defendant's contention that the court violated his right to due process in denying him good-time credit. Thus, we modify the judgment to add 82 days of work-time credit to the 329 actual days of pre-sentence custody previously awarded, for a total of 411 days of custody credit.

Finally, we strike the prior prison term enhancements (§ 667.5, subd. (b)) pursuant to recently enacted Senate Bill No. 136. As modified, we affirm the judgment.

## BACKGROUND[2]

On October 13, 2017, defendant approached his neighbor, Eduardo Carranza, while Carranza was inside his garage. After telling Carranza that he wanted to fight, defendant punched Carranza in the face. Carranza fell to the ground; not knowing why defendant wanted to fight, he told defendant to leave. Defendant walked away.

---

[2] We limit our recitation of the facts to those matters necessary to a determination of the issues raised in this appeal. We do not address the facts supporting defendant's conviction on count 2 for vandalism over $400.

Two days later, defendant again approached Carranza at his home. Carranza testified that defendant called out his name as he was about to get into a car where his wife, Cynthia Hernandez, and their three children had been waiting. Defendant approached Carranza, extended his right hand, and said that he wanted to apologize. When Carranza extended his hand to reciprocate, defendant grabbed Carranza's hand, pulled Carranza toward him, and punched Carranza "hard" in the forehead. Carranza put his hands up to protect himself while defendant used both fists to punch Carranza on his nose, mouth, cheek, and both side of his head.

Hernandez testified that she got out of the car and tried to pull defendant from Carranza, who had fallen to the ground, because she feared that defendant "was just going to beat him up until he couldn't get up any more." Her attempt was unsuccessful, and defendant continued punching Carranza.

Carranza's step-daughter, Lizette, testified that she watched from the car as defendant pinned Carranza to the ground and continued "beating" him. Lizette called 911 and told an operator that her father was being attacked and was "bleeding a lot." According to Hernandez, defendant stopped his attack when he heard the police had been called. Both Lizette and Hernandez estimated that defendant's attack lasted two or three minutes. Carranza estimated he had been punched 15 times.

When the paramedics arrived, they took photographs of Carranza's injuries.[3]  The photographs were displayed for the jury, and Carranza identified a "boomerang-shaped, red area" above his left eyebrow, a gash underneath his lip, and abrasions on his left shoulder and arm.  Carranza testified that he continued to experience swelling and pain in his face, head, and knee, and had blurry vision in one of his eyes.

Defendant did not testify in his defense.

## DISCUSSION

I.    *Aggravated Assault Charge in Count 3*

A.    *Relevant Proceedings*

Following testimony from Carranza, Hernandez, and Lizette during its case-in-chief, the prosecution moved under section 1009 to amend the information to add count 3 charging assault by means of force likely to inflict great bodily injury (§ 245, subd. (a)(4)).  Defense counsel objected to the amendment on the ground that defendant's conduct did not constitute means of force likely to cause great bodily injury.  Counsel also argued the additional count would prejudice defendant because the battery with serious bodily injury charge on count 1 required the jury to determine that serious bodily injury was actually inflicted, whereas the added aggravated assault charge

---

[3]    Carranza refused to go to the hospital because he could not afford a medical bill.

5

required the jury to conclude only that defendant's use of force was likely to cause great bodily injury.

The court granted the motion to amend, finding the evidence presented at the preliminary hearing, as well as at trial, was sufficient for a jury to find defendant guilty of violating section 245, subdivision (a)(4). The court reasoned that the amendment would not prejudice defendant, because the new charge was based on the same incident giving rise to the charge of battery with serious bodily injury in count 1, and defendant would be able to further cross-examine Carranza, Hernandez, or Lizette by recalling them, or by calling them as adverse witnesses during defendant's case.

When the prosecution rested, defense counsel moved to dismiss count 3 under section 1118.1 on the same grounds it had argued during the prosecution's motion to amend. The court denied the motion.

Before sentencing, defendant filed a motion for a new trial, or alternatively, to reduce count 3 to the lesser-included offense of assault pursuant to section 1181, subdivision (6). Defendant argued the court should modify count 3 "due to the nature and timing of the charge and the lack of ability of [defendant] to properly challenge the Count through-out the trial process." The court denied the motion, finding substantial evidence supported the jury's verdict on count 3.

B. *Contentions*

Defendant challenges the court's orders amending the information to add count 3 (§ 1009), denying his motion for acquittal (§ 1118.1), and

denying his motion for a new trial (§ 1181, subd. (6)). His contentions lack merit.

### 1. *Amendment to Add Count 3*

Section 1009 provides the trial court with discretion to permit the amendment of the information "for any defect or insufficiency, at any stage of the proceedings," so long as the amended information does not "charge an offense not shown by the evidence taken at the preliminary examination." We review the court's rulings under section 1009 for abuse of discretion. (*People v. Hamernik* (2016) 1 Cal.App.5th 412, 424; *In re Man J.* (1983) 149 Cal.App.3d 475, 481 [discretion to permit amendments is "broad" and "almost invariably upheld"].)

The charge of assault by means of force likely to cause great bodily injury under subdivision (a)(4) of section 245, requires proof that the defendant committed "an assault upon the person of another by any means of force likely to produce great bodily injury." "Great bodily injury" in this context refers to bodily injury that is significant or substantial. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)

Because the statute's focus is on the likelihood of injury, the actual production of injury is not required. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065–1066 (*Armstrong*).) In other words, section 245 refers not to the significance of the injury sustained, but to the amount of force used that would likely produce a significant or substantial injury. (*People v. Johnson* (2016) 244 Cal.App.4th 384, 396, fn. 8.) That determination is

7

properly for the jury to decide based on all of the evidence, including but not limited to the injuries inflicted on the victim. (*Armstrong*, *supra*, at p. 1066.)

With respect to whether the amended charge was shown by the evidence presented at the preliminary hearing, defendant makes no specific challenge to the actual evidence presented at the preliminary hearing. Rather, he states (without citing any of the preliminary hearing evidence) that "the trial evidence was the same as that at the preliminary hearing." To the extent defendant is contending that the preliminary hearing evidence was insufficient to support the amendment, he has forfeited the contention. (*Brown v. County of Tehama* (2013) 213 Cal.App.4th 704, 726.)[4]

As to whether the trial testimony supported the amendment, Carranza (the victim) and the two percipient witnesses (Hernandez and Lizette) described the assault in terms that leave no doubt that defendant assaulted Carranza by means of force likely to produce great bodily injury. Under the pretense of an apology, defendant sucker punched Carranza in the face and continued beating him for two to three minutes. Fearing Carranza was not going to get up from the beating, Hernandez unsuccessfully tried to pull away defendant. When the paramedics arrived, they took photographs of gashes to Carranza's

---

[4] We note that only Carranza testified at the preliminary hearing. He described the assault with substantially the same specificity as at trial, without contradiction.

8

forehead and lip. Due to the assault, Carranza continued to suffer from blurry vision and pain. This evidence amply supported the amendment.

Defendant's contentions to the contrary are unpersuasive. Pointing to his acquittal on count 1 for battery with serious bodily injury, he asserts that whenever a victim does not suffer severe injuries, the only rational conclusion is that the defendant could not have used force likely to cause great bodily injury. The contention is fallacious: the level of injury inflicted is certainly relevant to the question of the force used, but it is not determinative. (See *Armstrong*, *supra*, 8 Cal.App.4th at p. 1065 ["'the results of an assault are often highly probative of the amount of force used, [but] they cannot be conclusive'"].) One can use force likely to create bodily injury, yet be unsuccessful in inflicting it.[5] And to the extent defendant finds inconsistency in the jury's verdict on counts 1 and 3 (there is not), that inconsistency is of no moment. (See § 954; *People v. Hussain* (2014) 231 Cal.App.4th 261, 273 ["'The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying, consequence of a criminal justice system'"].)

Next, defendant contends that because he committed a battery on Carranza, not a mere assault, the court should not have added a charge

---

[5] The cases on which defendant relies lend no support. (See *People v. Taylor* (2004) 118 Cal.App.4th 11, 24 ["great bodily injury" as used in section 245, and "serious bodily injury," as used in section 243, "have separate and distinct statutory definitions"]; *People v. Bertoldo* (1978) 77 Cal.App.3d 627, 633 ["one may conceivably commit a felony battery without committing an aggravated assault"], disapproved on another ground in *In re Johnny G.* (1979) 25 Cal.3d 543.)

9

of assault.  However, recognizing that aggressors should not be rewarded for completing assaultive acts, the law independently sanctions assaults and batteries as discrete offenses.  (*People v. Colantuono* (1994) 7 Cal.4th 206, 217, superseded by statute on another ground as stated in *People v. Conley* (2016) 63 Cal.4th 646.)

Finally, defendant asserts the amended charge prejudiced his case because he did not receive written notice of the charge.  However, as defendant concedes, the notice afforded him emanates not from the information, but from the evidence presented at the preliminary hearing.  (*People v. Calhoun* (2019) 38 Cal.App.5th 275, 306.)  As we have discussed, defendant has conceded that the evidence at the preliminary hearing mirrored the trial evidence.  Thus, the preliminary hearing evidence provided notice of the possibility of the amended charge.  (See *People v. Peyton* (2009) 176 Cal.App.4th 642, 660 [upholding amended charge because it was based on "the same course of conduct," "involved the same victim," and dealt with "the same underlying acts" as the original information].)  Moreover, we fail to see how defendant could possibly have been blindsided, given that the trial court ruled that defendant could recall Carranza, Hernandez, and Lizzette for further cross-examination.

To the extent defendant contends the jury was somehow confused about how to evaluate the evidence, the record does not support his contention.  The jury instructions (CALCRIM Nos. 925, 875) clearly defined each crime and instructed the jury that defendant need not touch or injure the victim in order to be convicted of aggravated

10

assault.[6] Nothing in the record suggests that the jury was confused about the instructions.[7]

In short, the court did not err by amending the information.

2.    *Denial of Motion for Judgment of Acquittal and Motion for a New Trial*

The foregoing discussion largely disposes of defendant's contentions that the trial court erred in denying his motion for judgment of acquittal and his motion for a new trial.

Section 1118.1 provides that the trial court must order a judgment of acquittal of one or more charges following the close of the evidence on either side and before the case is submitted to the jury "if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." In reviewing the motion for acquittal, we independently review the record to determine if substantial evidence supported the conviction at the time the motion was made. (*People v. Dalton* (2019) 7 Cal.5th 166, 249; *People v. Cole* (2004) 33 Cal.4th 1158,

---

[6]    CALCRIM No. 875, which defined assault by means of force likely to produce great bodily injury, provided that "[t]he People are not required to prove that the defendant actually touched someone," or that "[n]o one needs to actually have been injured by defendant's act."

[7]    The jury submitted one question to the court: "If [we] cannot come to a unanimous decision on the seriousness of the bodily injury inflicted for count #1, can we deliberate on the lesser charge or does he lose the battery charge completely?" The court responded: "if you cannot reach a unanimous verdict on count one for Battery with Serious Bodily Injury, do not reach a verdict on the lesser included offense of battery."

1213.)  We have already described the evidence of defendant's assault on Carranza.  No further discussion is needed:  viewing the record in the light most favorable to the judgment to determine whether it discloses substantial evidence (*People v. Veamatahau* (2020) 9 Cal.5th 16, 22), the record without a doubt supports the conviction of assault by means of force likely to produce great bodily injury.

As for the motion for new trial, section 1181, subdivision (6) provides for a new trial or modification of the verdict to a lesser degree "[w]hen the verdict or finding is contrary to law or evidence."  We review the court's rulings under subdivision (6) of section 1181 for abuse of discretion.  (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1063; *People v. Dickens* (2005) 130 Cal.App.4th 1245, 1252 [discretion to sustain verdict is "broad" and will not be reversed "'absent a manifest and unmistakable abuse of that discretion'"].)  Given the evidence supporting the aggravated assault conviction, and the absence of any prejudice to defendant from the addition of the charge during trial, the trial court did not err in denying defendant's new trial motion.

II.    *Pre-sentence Custody Credit*

Defendant asserts the court violated due process and abused its discretion when it denied him any pre-sentence, good-time credits, because it did not provide him advance written notice of its intention to deny him credits.  He also contends the court erred in denying him work-time credits because there was no evidence that he "refused to satisfactorily perform labor as assigned by the sheriff" (§ 4019, subd. (b)).  The People agree with defendant's contention regarding work-time

12

credit, but contend that the court properly denied good-time credits. We agree with the People.

A.   *Relevant Proceedings*

During the first day of trial on June 12, 2018, the Sheriff's Department submitted a disciplinary report chronicling defendant's assaults and insubordination while in custody. That day, on the record and before jury selection, the court summarized three incidents between December 2017 and April 2018 involving physical attacks and threats, gassing of deputies, and disobeying orders.

On the third day of trial, the court called Sergeant Steven Bullard to testify outside the presence of the jury. Bullard testified that during the morning commute from jail, defendant had urinated on the bus and requested medical care. When the paramedics arrived at the courthouse, defendant refused medical attention. According to Bullard, defendant had done the same thing on eight prior occasions beginning in December 2017. On the fourth day of trial, Bullard again testified outside the presence of the jury, and informed the court that defendant had threatened custodial officers and refused to move inside a courthouse elevator.

On July 20, 2018, the original date of sentencing, defendant appeared, but his trial counsel did not. The court continued the hearing to August 17, and informed defendant and his stand-in counsel that the parties "should be prepared to address the issue if the defendant can receive[] good[-]time work[-]time credits." The court later continued the sentencing hearing two more times after defense counsel failed to

13

appear. During one of the interim hearings, a bailiff testified that defendant had complained of chest pains and later refused medical treatment while in lockup.

The court began the September 17 sentencing hearing by noting that it had previously notified the parties that they should be prepared to discuss defendant's entitlement to good-time and work-time custody credits. Defense counsel (who had not appeared at the original sentencing hearing) stated that stand-in counsel had informed him of the need to be prepared to discuss the issue.

The court stated that it was inclined to deny all good-time and work-time credits in light of "the sheer number of assaults on deputies, as well as, disruption of the process."

Defense counsel responded that he had not addressed the issue because he did not believe the court (as opposed to the Sheriff's Department and Department of Corrections) had the authority to withhold credits. The court disagreed, and began to pronounce sentence, at which point defendant interjected:

"THE DEFENDANT: Hey, Your Honor. Hey, Your Honor.

"THE COURT: Sir, if you disrupt the courtroom—

"THE DEFENDANT: Fuck that, homosexual, bitch-ass nigga. Fuck that, you fag-ass, bitch-ass nigga. Fuck that, homosexual, bitch-ass nigga. All the—fuck you, bitch-ass nigga."

Defendant was escorted to lockup by a group of custodial officers. In defendant's absence, the trial judge reported that defendant had spit at him and began fighting the deputies. "And it took five or six deputies to wrestle him into the lockup area." The judge stated that he needed

14

to leave the bench "to catch my breath" because the incident had left him "a bit disturbed."

Proceeding with sentencing, the court withheld all good-time and work-time credits on the 329 days of actual credit defendant had received for time spent in custody. The court reasoned that because defendant's in-court misconduct was "the most egregious case" it had ever witnessed, the court would have withheld the credits without relying on the disciplinary report.

B.     *Denial of Good-Time Credits*

Defendants are generally entitled to one day of good-time custody credit for each four-day period of confinement "unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations" established by the sheriff. (§ 4019, subd. (c).)

The sentencing court is vested with discretion to decide whether to deduct conduct credits for pre-sentence custody. (*People v. Duesler* (1988) 203 Cal.App.3d 273, 276 (*Duesler*); (*People v. Johnson* (1981) 120 Cal.App.3d 808, 814 (*Johnson*); see also Cal. Rules of Court, Rules 4.310, 4.472.) "The court's resolution of such a dispute is reviewable for abuse of discretion, and the court enjoys some discretion in determining the amount of credit to be withheld for a serious act of misconduct. [Citations.] But no authority suggests the court's discretion in the matter is so broad as to permit it to withhold conduct credits from a prisoner who has satisfied the statutory prerequisites and is entitled to receive them, or to grant credits to a defendant who is ineligible to

15

receive them by reason of misbehavior or statutory disability." (*People v. Lara* (2012) 54 Cal.4th 896, 903 (*Lara*), fn. omitted.)

Here, the trial court did not abuse its discretion by withholding good-time conduct credit. The disciplinary report established defendant had engaged in ongoing acts of insubordination in custody between December 2017 (two months after he had assaulted Carranza) and September 2018 (during sentencing). Defendant also engaged in flagrant conduct in court by spitting, screaming, and cursing at the trial judge. In light of such consistent and egregious misconduct, an award of good-time credit in this case would undermine the very purpose of awarding conduct credits. (See *Lara, supra,* 54 Cal.4th at p. 906 [conduct credits designed to "foster constructive behavior in prison"].) Thus, the trial court did not abuse its discretion in denying defendant good-time credits.

Though defendant's opening brief appears to question the impartiality of the trial court's decision to independently raise the issue of conduct credits, defendant, in his reply brief, argues that his due process rights were violated because he was provided insufficient notice on the court's intent to rule on the issue. Defendant asserts that written notice is the real issue. The issue of notice however, was not raised at the sentencing hearing, and in fact, defense counsel conceded that he had received actual notice from stand-in counsel. Thus, defendant has forfeited the issue. (See *People v. Cole, supra,* 33 Cal.4th at p. 1205; *People v. Bright* (1996) 12 Cal.4th 652, 671, overruled on another ground in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6.)

16

His argument is meritless in any event, as he was twice afforded "'advance written notice of the claimed violations of [jail] rules,'" and an opportunity to rebut the findings of his jail violations and present any mitigating factors. (*Duesler, supra*, 203 Cal.App.3d at p. 277, quoting *In re Walrath* (1980) 106 Cal.App.3d 426, 432.) On the first day of trial, defendant and the court received a copy of the Sheriff's Department disciplinary report chronicling defendant's jail violations. (See *Lara, supra*, 54 Cal.4th at p. 906 [credit-limiting facts need not be formally pled and proven]; *People v. Fitzgerald* (1997) 59 Cal.App.4th 932, 936-937 [information charging defendant with violent felonies imparted notice that his presentence custody credits would be limited under section 2933.1].) In addition to the advance written notice of the report, the court actually notified the parties two months before the continued sentencing hearing that they should be prepared to discuss defendant's entitlement to custody credits. With such advance notice affording defendant a reasonable opportunity to prepare and present a defense, defendant's right to due process was not violated. [8]

## C.   *Denial of Work-Time Credits*

Defendant's entitlement to work-time credits is a separate consideration. (*Johnson, supra*, 120 Cal.App.3d at pp. 812, 815

---

[8]   On appeal, for the first time, defendant purports to challenge the veracity of the disciplinary report. In doing so, he requests judicial notice of a class action settlement between inmates at jail facilities in the County of Los Angeles and the Sheriff's Department. In light of our conclusion, we deny defendant's request for judicial notice.

17

[defendant's misconduct "cannot serve as the basis for automatically denying him work/time credits for the entire period of his confinement, but rather, . . . the grant or denial of such credits must be based on the standards set forth in section 4019, subdivisions (b) and (d)"].)

"Subject to subdivision (d), for each four-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from the prisoner's period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff." (§ 4019, subd. (b).) Subdivision (d) provides that section 4019 "does not require the sheriff, . . . to assign labor to a prisoner if it appears from the record that the prisoner has refused to satisfactorily perform labor as assigned or that the prisoner has not satisfactorily complied with the reasonable rules and regulations of the sheriff."

As the People concede, the record sheds no light on whether defendant refused to satisfactorily perform labor as assigned by the Sheriff's Department, or whether custodial officials failed to provide him work for his failure to comply with the reasonable rules and regulations. Absent an evidentiary basis to show defendant is not entitled such credits, the trial court erred in denying work-time credit. (See *Johnson*, *supra*, 120 Cal.App.3d at p. 815.) We modify the judgment to reflect a total of 411 days credit against defendant's prison term under section 2900.5. That credit consists of 329 days of actual pre-sentence custody previously awarded, plus 82 days credit under section 4019.

18

3.	*Senate Bill No. 136*

Defendant contends the trial court imposed an unauthorized sentence by imposing the prior prison term enhancement under section 667.5, subdivision (b).  The People agree that, due to the recent enactment of Senate Bill No. 136, the court should have stricken the enhancements.

While this appeal was pending, Senate Bill No. 136 amended section 667.5, subdivision (b), to restrict the circumstances under which a one-year sentence enhancement may be imposed for a prior prison term.  (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.)  The court imposed a one-year prior prison term enhancement based on prior convictions for possession of a loaded firearm (former § 12031, subd. (a)(1)) and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  Section 667.5, subdivision (b) now allows for the imposition of a one-year prior prison term enhancement only if the prior prison term was served for a sexually violent offense.

The People acknowledge Senate Bill No. 136 applies retroactively to those like defendant whose sentences were not final at the time that Senate Bill No. 136 became effective.  (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 13–14.)  We agree, and strike the one-year prior prison term enhancements (only one of which was actually imposed).

//

//

//

19

## DISPOSITION

The judgment is modified to strike the one-year prior prison term enhancements, and to reflect a total of 411 days credit against defendant's prison term. That credit consists of 329 days of actual pre-sentence custody previously awarded, plus 82 days credit under section 4019. As modified, the judgment is affirmed.

The Clerk of the Superior Court is directed to prepare and transmit to the Department of Corrections and Rehabilitation a corrected abstract of judgment and minutes reflecting our disposition.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

COLLINS, J.

CURREY J.

20