Filed 11/2/21  P. v. Sanders CA3
Opinion following rehearing

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C082454 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F06246) |
| v. | |
| EDUARDO SANDERS, | |
| Defendant and Appellant. | |

A jury convicted defendant Eduardo Sanders of robbery (Pen. Code, § 211; count 1)[1] and battery with infliction of serious bodily injury (§ 243, subd. (d); count 2), and found that defendant personally inflicted great bodily injury during the commission of the robbery (§ 12022.7, subd. (a)).  The trial court then found that defendant had

---

[1]  Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

1

suffered three prior convictions, including one strike and sentenced defendant to an aggregate prison term of 20 years.

Defendant contends: (1) the trial court violated due process in deducting five days of presentence conduct credits for misconduct in the jail and (2) failed to make clear exactly what fines and fees it was imposing. After we filed our opinion in this case, defendant requested rehearing and an opportunity to file supplemental briefing on the retroactive application of Senate Bill No. 136 (2019-2020 Reg. Sess.) (S.B. 136), pertaining to his sentences on his prior prison term enhancements (§ 667.5, subd. (b)) and Senate Bill No. 1393 (2017-2018 Reg. Sess.) (S.B. 1393), pertaining to the sentence on his serious felony conviction enhancement (§ 667, subd. (a)). We vacated our opinion and allowed the supplemental briefing.

We strike defendant's prior prison term enhancements and vacate the sentences related thereto. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of October 5, 2015, defendant left a Save Mart store in Sacramento with candy and soda he had not paid for. When the store manager went outside to call 911, defendant attacked him and punched him repeatedly, inflicting injuries to his mouth that required up to a dozen stitches at the emergency room.

The trial court imposed a 20-year aggregate state prison term, calculated as follows: the upper term of five years on count one, robbery, doubled to 10 years for the prior strike; three years consecutive for the great bodily injury enhancement; five years consecutive for the section 667, subdivision (a) serious felony enhancement; and two years consecutive for two prior prison term enhancements.[2]

---

[2] As to count two, battery with serious bodily injury, the court imposed the middle term of four years and stayed execution of that sentence pursuant to section 654.

2

# DISCUSSION

## I. Conduct Credits

Section 4019, subdivision (c) in effect at the time of defendant's sentencing provided that a court shall award conduct credits "unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp." Defendant contends the trial court violated state and federal due process guarantees by deducting five days of local conduct credits without prior written notice and an evidentiary hearing. He argues that a remand to recalculate those credits is therefore required. The Attorney General agrees, but we disagree and conclude the contention is forfeited.

According to the probation report, defendant had earned 261 actual days of presentence custody credit. It noted that because defendant was convicted of a violent felony, he would be entitled to only 15 percent conduct credits (§ 2933.1, subd. (c)). The report also noted that while in jail, defendant had participated in a fight, but did not suggest reducing conduct credits for that behavior.

At sentencing, the trial court stated: "I note in the probation report the probation officer indicates the defendant has had at least--and that's the way they phrase it--at least one additional write-up in the county jail for engaging in a mutual fight." The court then asked the bailiff whether he knew if defendant had "any other additional write-ups." The bailiff replied that defendant had one other, for "fail[ing] to rise for count." Defendant was placed "on restriction" for the two incidents.

The court asked defense counsel his understanding of "restriction" and counsel responded, "That means that he may lose the good time for that day." Thereafter, defense counsel told the court, "because of the nature of the offense it's a 15 percent. So it's not like he gets day-for-day credit. So we can't calculate it that way anyways, which would

3

make the math easier for me." In response to the court's question, the bailiff informed the court that defendant had been on restriction for five days.

The trial court stated: "Well, I'm going to deduct five days of good time because it's just I think fraudulent to give a defendant full good time work time when he is not respecting the rules of the system and has engaged in additional behavior that does not warrant that grant. [¶] So, madam clerk, are you able to indicate to me now what the defendant is entitled to with respect to credit for time served?" The clerk replied: "Yes. He would have 261 days actual. He would have 40 days good time work time minus the five that you're deducting would be 35 good time work time for a total of 296 days." The court awarded 35 days of conduct credit. Defendant offered no objection to the deduction of conduct credit or to any lack of notice.

In *People v. Duesler* (1988) 203 Cal.App.3d 273 (*Duesler*), the court addressed the deduction of presentence conduct credits. A probation report stated that the defendant had violated jail rules, but did not make any recommendation as to credits. (*Id.* at pp. 275, 277.) At sentencing, the trial court credited defendant with 76 days of "work time" but ruled he was not entitled to any work time credit based on a statement in the probation report that defendant had four rules violations. The court's withholding of the conduct credit was made without any discussion by the parties. (*Id.* at p. 275.) And there was no discussion how those rules violations would correlate to the deduction of all 76 days credit.[3] The defendant did not object. (*Ibid.*) On appeal, the defendant contended that he was deprived of due process as to credits because he did not receive notice and a hearing before the trial court ruled. (*Duesler,* at p. 276.) In an apparent case of first

---

[3] The *Duesler* court noted that defendant had been "cited for being out of bed after lights out, tearing a sheet into strips, fighting over another inmate's newspaper, and cooking inside the 'tank.'" The defendant was punished by jail authorities for three of these infractions by loss of roof and visitation privileges. (*Duesler, supra*, 203 Cal.App.3d at p. 275, fn. 2.)

4

impression, the *Duesler* court held that before a court withholds conduct credits, due process requires that the defendant receive "prior notice and an opportunity to (1) rebut the findings of his jail violations, and (2) present any mitigating factors." (*Id.* at p. 277.)

As noted, here no objection was made to the deduction of credits. Nor was there an objection to lack of notice and indeed, it is not at all clear that defense counsel did not have notice of the potential for reduction because no objection was made.[4] And unlike in *Duesler*, where there was no correlation between the loss of 76 credits and defendant's misconduct, here there was a correlation to the defendant's days of restriction to the deduction of conduct credits discussed by the court and counsel. Also unlike *Duesler*, where there was no discussion with the parties about deducting conduct credits, here the trial court not only discussed it with counsel, but consulted with counsel about the meaning of restriction. "In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim." (*People v. Scott* (1994) 9 Cal.4th 331, 351.) After *Duesler*, the procedure for deducting conduct credits was made clear. In our view, where there is no objection to the failure to afford that procedure to a defendant, the contention is forfeited. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 856, 857-858 [failure to object to imposition of probation costs imposed without complying with the procedural protections in section 1203.1b forfeits the claim on appeal]; see also *Scott,* at p. 354 ["claims deemed waived on appeal involve sentences which, though

---

[4] The court in *Duesler* stated that "[t]he presentence report is an appropriate vehicle for alerting the defendant that his conduct credits are in jeopardy where it suggests or recommends such action." (*Duesler, supra,* 203 Cal.App.3d at p. 277.) But the court did not state the presentence report is the only mechanism to provide notice.

otherwise permitted by law, were imposed in a procedurally or factually flawed manner"].)

Defendant argues the forfeiture rule does not apply, citing *People v. Goldman* (2014) 225 Cal.App.4th 950, an opinion from this court. In *Goldman*, the probation report noted defendant had been the subject of fifteen institution rule violation incident reports. (*Id*. at p. 960.) The trial court awarded defendant his custody credits for the days he had been detained pretrial, but did not award presentence conduct credits. (*Id*. at p. 961.) Although at sentencing there was discussion between the court and the prosecution about the conduct credits, the *Goldman* court's opinion provides no indication that defense counsel had anything to say about it; the opinion only states that the defendant did not object. (*Ibid*.) The *Goldman* panel rejected the Attorney General's forfeiture contention, reasoning that only challenges to discretionary sentencing choices are forfeited by failure to object, relying on *People v. Aguirre* (1997) 56 Cal.App.4th 1135 (*Aguirre*).

But in *Aguirre*, there was no question the defendant was entitled to some amount of credits; the issue was what formula should be used to calculate those credits. The trial court had applied the 15 percent limitation in section 2933.1, and the *Aguirre* court held that the defendant's contention on appeal that the trial court erroneously applied the wrong formula was not forfeited for failure to object in the trial court. (*Aguirre*, *supra*, 56 Cal.App.4th at p. 1139.) The *Aguirre* court held that "because the calculation of credits is purely mathematical, and because Aguirre's argument involves a statutory interpretation *of first impression*, we hold his failure to object at trial does not waive the issue on appeal." (*Ibid.*, italics added.)

Here, unlike the issue in *Aguirre*, the procedure trial courts should follow is not a matter of first impression. As noted, it was spelled out in *Duesler, supra*, 203 Cal.App.3d at page 276. This circumstance was not considered in *Goldman*. Additionally, the notion that the forfeiture rule applies only to discretionary decisions is

6

not correct. *Goldman* predates *Trujillo, supra,* 60 Cal.4th 850, where our high court applied the forfeiture rule to a nondiscretionary decision. The *Trujillo* court concluded the failure to object on the grounds that the procedural protections designed to afford due process in section 1203.1b related to the ability to pay probation costs forfeits the claim on appeal. (*Id*. at pp. 856, 857-858.) An order that defendant has the ability to pay the costs of probation does not involve the exercise of discretion. (§ 1203.1b, subd. (a) and (b) ["the court *shall* make a determination of the defendant's ability to pay and the payment amount"; "The court *shall* order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer, or the officer's authorized representative." (Italics added; see also *People v. McCullough* (2013) 56 Cal.4th 589, failure to object on lack of finding of ability to pay jail booking fees forfeited]).) And in any event, unlike where courts are directed to do something by a statute specifying the court "shall" do that thing, we consider the decisions to deduct conduct credits and the number of days to be deducted to be discretionary choices and thus the forfeiture rule clearly applies.

Suggesting his attorney did not have notice, defendant argues that "trial counsel was clearly caught 'flat footed.' He was obviously unprepared to present any evidence in appellant's favor or rebut the material provided by the bailiff." We do not read the record this way. Indeed, as we have noted, it was trial counsel who explained that restriction meant defendant would lose conduct credit. And for all we know from the record, trial counsel may have known there was no favorable evidence to present to avoid the five-day reduction. If there was, it should have been brought to the court's attention.

We conclude the contention is forfeited.

## II. Fees and Fines

Defendant contends that the trial court needs to make clear exactly what fines and fees it intended to impose and to direct the preparation of an amended abstract of judgment that reflects all of those fines and fees. We conclude the record is clear as to

7

what fines and fees were ordered.  However, we further conclude one mandatory fee was not ordered and agree that the abstract must be amended.

At sentencing, instead of stating the fines and fees it was imposing, the court used a shorthand method, cross-referencing the probation report recommendations.  The court stated: "[O]n page ten of the probation officer's report I'm going to impose paragraphs two and three."  Paragraphs two and three recommended a restitution fine (§ 1202.4) and parole revocation restitution fine of $6,000  (§ 1202.45).  The court continued:  "In addition, I will impose paragraphs five, six and seven."  Paragraph five recommended a $10 crime prevention program fee (§ 1202.5).  Paragraph six recommended a $367.81 jail booking fee (Gov. Code, § 29550.2).  Paragraph seven recommended a $67.03 jail classification fee (Gov. Code, § 29550.2).  Finally, the court stated:  "On page 11, paragraph eight.[5]  On page 12 the two paragraphs on that page as well."  The two paragraphs on page twelve recommended a $60 court facility fee (Gov. Code, § 70373), and a criminal impact fee equal to 20 percent of the base fine amount (§ 1465.7, subd. (a)).

A trial court may use a shorthand method of articulating imposition of the fines. (See *People v. Hamed* (2013) 221 Cal.App.4th 928, 939 [approving of cross-referencing to the probation report]; *People v. Sharret* (2011) 191 Cal.App.4th 859, 865 [approving a shorthand method of imposing penalty assessments].)  We see nothing wrong with the court's oral imposition of the fines we just mentioned.  The record is clear what fines and fees the court imposed.  However, the trial court missed a mandatory fee -- it did not cross-reference or otherwise mention the mandatory court operations assessment (§ 1465.8, subd. (a)(1)) set out as $80 in the last paragraph on page 11 of the probation report.  Also, the abstract does not show the $60 court facility fee (Gov. Code, § 70373),

---

[5]  Paragraph eight on page 11 is the firearm possession prohibition advisement.

8

the $10 crime prevention program fee (§ 1202.5), or the $367.81 main jail booking fee (Gov. Code, § 29550.2) orally imposed by the court.

The $80 court operations assessment (§ 1465.8, subd. (a)(1)) is mandatory, and we may correct the court's error in failing to impose it. (*People v. Smith* (2001) 24 Cal.4th 849, 854 [Court of Appeal may impose mandatory probation restitution fine not imposed by the trial court]; *People v. Turner* (2002) 96 Cal.App.4th 1409, 1413-1414, 1416-1417 [trial court's failure to impose mandatory drug laboratory fee and associated penalty assessments was an unauthorized sentence and appellate court is empowered to order defendant to pay].) We shall also direct correction of the abstract to show the fees orally imposed by the court.

### III. S.B. 136

Effective January 2019, S.B. 136, eliminated the enhancement for prior prison terms except for sexually violent offenses. (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1.) The parties agree that S.B. 136 should be applied retroactively to defendant and so do we. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 761, 772; *People v. Winn* (2020) 44 Cal.App.5th 859, 872-873; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341.) We will therefore strike the prior prison term enhancements and vacate the corresponding sentences.

### IV. S.B. 1393

Effective January 2019, S.B. 1393 authorized trial courts to strike or dismiss section 667, subdivision (a) prior serious felony enhancements under section 1385, subdivision (a). (§ 667, subd. (a), as amended by Stats. 2018, ch. 1013, §§ 1 & 2.) The parties agree that S.B. 1393 applies retroactively to all matters that were pending appeal at the time it became effective. So do we. (*People v. Stamps* (2020) 9 Cal.5th 685, 699.)

Were it not for statements made by the trial court at sentencing, we would remand this matter back to the trial court to allow the trial court to determine whether to strike or dismiss the enhancement "in furtherance of justice" under section 1385, subdivision (a).

9

But we need not do so "if 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] ... enhancement' even if it had the discretion." (*People v. Jones* (2019) 32 Cal.App.5th 267, 273 (*Jones*), quoting *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) "The trial court need not have specifically stated at sentencing it would not strike the enhancement if it had the discretion to do so. Rather, we review the trial court's statements and sentencing decisions to infer what its intent would have been." (*Jones,* at p. 273.)

At sentencing, defendant told the court he had been "railroaded" and what the witnesses said did not happen. And he said he did not mean to hit anyone. The trial court responded by saying defendant had sucker punched the victim. The court continued: "I heard the evidence . . . and the evidence was overwhelming to convict you." The court added: "I take a look at your criminal history, and you have been quite the consumer of the criminal justice system. Virtually every — each and every year since you've been a young man starting back in 1991 you have been mainly in custody or on probation or on parole." The court then stated: "[M]oreover, you are a very angry person. Because when people – law abiding people who are just doing their jobs . . . and they come into contact with you and tell you you can't steal from their store, you have a reaction. And that reaction appears to this Court to be engaged in violent behavior towards . . . law abiding citizens. [¶] And at some point in time the community is entitled to some protection from your inability to maintain your composure. And it would be an absolute travesty in this Court's opinion to give you anything other than the upper term."

In explaining its upper term sentencing choice, the trial court expressly excluded the fact that defendant had served prior prison terms as an aggravating factor to avoid the dual use rule. It then found that the crime showed "planning, sophistication, and professionalism." The court made this finding based on the evidence showing defendant entered a store, picked up a bag, "loaded up the bag up with items he intended to steal,"

10

walked out of the store and "when he saw the manager on the phone apparently calling law enforcement, the next thing the manager knows is he's waking up on the ground with significant injuries." The court further found that defendant had "engaged in other acts of violent conduct which indicates a serious danger to society." And the court noted defendant was on probation at the time of the offense and that his prior performance on probation and parole had been unsatisfactory.

The trial court mentioned no circumstances in mitigation. Likewise, in his supplemental briefing, defendant points to no circumstances on which the court could have relied in exercising its discretion to strike or dismiss the serious felony conviction enhancement in the furtherance of justice under section 1385, subdivision (a) if it had had the authority to do so, and we see nothing in the record before us. Moreover, as noted, the trial court even deducted conduct credits because of defendant's conduct at the jail.

Under these circumstances, we are confident the court would not have stricken the serious felony prior enhancement and its resulting sentence out of leniency toward defendant. (See *Jones*, *supra*, 32 Cal.App.5th at p. 275.) Therefore, we decline to remand the matter for resentencing on the enhancement imposed under section 667, subdivision (a) because to do so would be a clear exercise in futility.

## DISPOSITION

We strike defendant's two section 667.5, subdivision (b) prior prison term enhancements and vacate the two one-year sentences. We order imposition of an $80 court operations assessment (§ 1465.8, subd. (a)(1)) and direct the court to include it on the abstract of judgment. We further direct the court to correct the abstract of judgment to include the $60 court facility fee (Gov. Code, § 70373), the $10 crime prevention program fee (§ 1202.5), the $367.81 main jail booking fee (Gov. Code, § 29550.2), and the $67.03 main jail classification fee (Gov. Code, § 29550.2), all of which were imposed by the trial court. We further direct that a certified copy of the corrected abstract of

11

judgment be forwarded to the California Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

                                                           /s/
                                           MURRAY, Acting P. J.

We concur:

    /s/
RENNER, J.

    /s/
KRAUSE, J.